**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 24-342** |
| **MARK MORELLA** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Mark Morella awaits sentencing for his admitted role engaging in sexually explicit communications with what he believed to be a 15-year-old child, who was really an undercover Homeland Security Investigations (HSI) Task Force Officer (TFO). In his Grindr communications with the "child," Morella distributed images of erect penises and his own bare buttocks while requesting explicit images from the "child" in return, and arranged to meet the "child" at a local grocery store to engage in sex. For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration within the advisory guideline range of 27 to 33 months, to be followed by 5 years' supervised release, absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum**.**

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. See USSG § 1B1.1 (Nov. 1, 2025). At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors

should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I. <u>PROCEDURAL BACKGROUND</u>

On May 28, 2026, the federal grand jury returned a three count superseding indictment charging the defendant with use of an interstate commerce facility to entice and attempt to entice a minor to engage in sexual conduct, in violation of 18 U.S.C. § 2422(b) (Count One), attempted receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2), (b)(1) (Count Two), and attempted transfer of obscene material to a minor, in violation 18 U.S.C. § 1470 (Count Three). On June 8, 2024, the U.S. Attorney's Office filed a one count superseding information charging the defendant with attempted possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). On the same day, the defendant entered into a guilty plea agreement and pled guilty to the superseding information. During his plea colloquy, the defendant admitted that

during the afternoon of July 22, 2024 in Northampton County he engaged in sexually explicit communications and sent obscene materials with the use of his cellular phone and mobile application Grindr to a person he believed to be a 15-year-old boy in an effort to get the child to send sexually explicit images in return.

The sentencing hearing is set for October 8, 2026, before this Court.

## II. CRIMINAL CONDUCT

On July 22, 2024, using his cell phone and the mobile application Grindr, the defendant communicated with a person he believed to be a 15-year-old boy, but who was actually a trained undercover (UC) HSI TFO in Northampton County. In his Grindr communications, the defendant requested that the "child," with whom he believed he was chatting, send him images of child pornography in an attempt to possess the images on his cell phone. Specifically, the defendant, operating his Grindr account on his cellular phone and displaying a "shrugged shoulders" emoji as his profile picture, contacted the UC, and the first message sent was "want head?" The UC quickly directed the conversation towards the discussion of age and told the defendant that he was 15 years old. The defendant responded "ohh I don't mind if you don't mind."

The defendant continued to engage the UC in sexually explicit conversations to include discussions of oral sex and requested "can I see what I'm gonna suck on?" and "can I see your cock[.]" In an interview with law enforcement after his arrest, the defendant was asked what he hoped to receive by making these requests of the child. The defendant's response to these inquires was that he hoped to receive a "dick pic" from what he believed to be a 15-year-old boy.

In the same interview, the defendant acknowledged that he was aware of the age of the child prior to making these requests and that he understood that he was speaking with, and requesting these images from, a 15-year-old child.

Later in the morning, the defendant drove to what he believed to be the child's home, only to turn around when he detected a police presence in the neighborhood on his approach. He continued to communicate with the undercover TFO and arranged to meet the boy at a local Wegman's.

The same evening, law enforcement arrived at Wegman's in marked and unmarked police vehicles and attempted to take the defendant, seated in a Chevy Tahoe, into custody. The defendant, in attempt to flee the parking lot, struck three law enforcement vehicles before being removed from his truck and taken into custody. He agreed to speak to police and admitted to requesting pictures of a penis from a person he believed to be a 15-year-old boy.

## III. SENTENCING CALCULATION

### A. Statutory Maximum Sentences

The maximum statutory penalty is 10 years' incarceration, a minimum 5 years up to a lifetime of supervised release, a $250,000 fine, a $100 special assessment, mandatory restitution of at least $3,000 pursuant to 18 U.S.C. § 2259, and under 18 U.S.C. § 2259A, an additional special assessment of no more than $17,000.

## B. Sentencing Guidelines Calculation

The government agrees with the United States Probation Office (USPO) that the defendant's advisory guideline imprisonment range is 27 to 33 months. The defendant's guidelines are correctly calculated as follows:

- The guideline for a violation of 18 U.S.C. § 2252(a)(4)(B) is USSG §2G2.2. The base offense level is 18, pursuant to USSG §2G2.2(a)(1), because the defendant was convicted of 18 U.S.C. § 2252(a)(4)(B).
- The defendant used a computer (his cellphone) or interactive computer service to persuade and entice the (undercover) minor victim to engage in sexually explicit conduct; therefore, the offense is increased by 2 levels, pursuant to USSG §2G2.2(b)(6).
- The defendant has demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by 2 levels, pursuant to USSG §3E1.1(a).
- The defendant's total offense level is 18.

The defendant's criminal history score is 0, establishing a criminal history category of I. The applicable guidelines range for an offense level of 18 and criminal history category of I is 27 to 33 months' incarceration.

## IV. SENTENCING ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United*

*States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

**Consideration of the 3553(a) Factors**

**A. The nature and circumstances of the offenses.**

Child sexual exploitation crimes are undisputedly grave offenses. As the Supreme Court has explained, "[c]hild pornography harms and debases the most defenseless of our citizens. Both the State and Federal Government have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008). Congress, too, has explained the difficulties in successfully combating the "immense" problem of child pornography and the "rapidly-growing market" for such materials, which is fueled by new technologies that were largely unavailable when the Sentencing Guidelines were first promulgated. *See* S. Rep. No. 108-2 (2003).

Indeed, Congress has repeatedly expressed its dismay about the "excessive leniency" of federal sentences for child pornography offenses, *see* H. Rep. No. 108-66; S. Rep. No. 104-358, especially in light of the continuing harm caused to the children appearing in such materials, as well as the inflammatory effect it has on the "desires of child molesters, pedophiles, and child pornographers," which results in a robust and growing market for child pornography and therefore increased abuse of innocent children. *Child Pornography Prevention Act of 1996,* Pub. L. No. 104-208, § 121, 110 Stat. 3009, 3009-26, 27 (1996), codified at 18 U.S.C. § 2251 note; *see United States v. MacEwan*, 445 F.3d 249, 250 (3d Cir. 2006); *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998) ("[T]he victimization of the children involved does not end when the pornographer's camera is put away.").

In the instant case, the defendant admitted that during his lengthy Grindr communication he was seeking to obtain sexually explicit images from a person he believed was a minor boy. The defendant made arrangements to meet up with the child for sex, and in advance of their meeting

repeatedly requested of this child, “can I see what I’m gonna suck on?” and “Can I see your cock?” The defendant engaged in this criminal behavior, despite believing that the image would depict a child and that what he was doing was criminal. Further, the defendant continued to engage in his quest for contact and/or images from whom he referred to in his post arrest interview as “the kid.” Incredibly, he was not deterred even after identifying a police presence at the provided meeting place. Though he called off the meeting, the defendant continued to communicate with the “child,” proposed a second meeting location, and again traveled to that location to have sex with the “child.” His criminal conduct demonstrates his danger to any child in the community, and his sentence should reflect the danger he poses.

**B. <u>The history and characteristics of the defendant</u>**

The defendant is a 40-year-old man who owns a home in Nazareth, Pennsylvania where he resides with a couple who rent from him. PSR ¶ 41. He is employed at his father’s business JMT Environmental Technologies. *Id.* ¶ 38. The defendant recalls a “good and typical” upbringing. Since his arrest in July 2024 he has attended sex offender treatment weekly, and in addition, in July 2026, began attending weekly sex offender therapy sessions. *Id.* ¶ 49-50. The defendant worked as a local firefighter from 2012 to 2024. He served in various leadership positions in the Fire Company to include Assistant Fire Chief which brought him in contact with local law enforcement. *Id.* ¶ 57.

The government notes that the defendant was cooperative with law enforcement during the investigation and admitted responsibility for his actions. These actions were properly accounted for in the Guideline calculations. USSG § 3E1.1.

**C. The seriousness of the offense, respect for the law, and just punishment**

A term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2). This defendant's crime is serious. The involvement of law enforcement conducting a proactive undercover operation should in no way be seen as an attenuating factor. Just the opposite, the operation exposed and identified a person who was actively seeking to use the internet to sexually exploit children for his own selfish needs. This criminal conduct contributes to the market for child pornography and places the most vulnerable members of our community at risk.

As to the second factor, the defendant has demonstrated that he has no respect for the law. As a volunteer firefighter, his actions contribute to the victimization of young and vulnerable children, the very people he is trained to protect. He admitted that he knew his behavior was illegal and wrong, but that did nothing to curtail his criminal acts.

As for the last factor, the recommended sentence will serve to adequately punish this defendant. The defendant broke the laws designed to protect children. The defendant's criminal conduct was meant to exploit the vulnerable youth presence on social media platforms for his own sexual gratification. The recommended sentence is necessary to protect those who cannot protect themselves.

**D. Deterrence and protection of the public**

Deterrence is also one of the factors driving the sentence in this case, and the recommended sentence would address this concern. The defendant needs to be deterred from committing similar crimes in the future. Despite his upbringing in a "loving family" and his various leadership roles

in the community, the defendant chose to violate the public's trust and engage in criminal behavior. The willingness to take extreme risks even when he believed his position may have been compromised by law enforcement shows that his desire for sexual gratification is not easily deterred. A significant sentence is necessary to deter him from ever contemplating engaging in the exploitation of children again. The recommended sentence in this matter will also serve to protect the public generally and children specifically from the defendant's criminal behavior.

Section 3553(a)(2) also mandates that the Court consider a sentence that adequately deters others who would commit similar offenses. The sentence in this case must give notice that the sexual exploitation of children has serious and significant consequences. The term of incarceration recommended in this case will serve as a deterrent to those who may contemplate the consequences of viewing and possessing child pornography.

**E. <u>Restitution</u>**

Mandatory restitution does not apply because the defendant communicated with an UC TFO and no loss was incurred. 18 U.S.C. § 2259(b)(2)(A).

**F. <u>Supervised Release</u>**

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets

forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of five years is warranted. As explained above, the defendant persisted in his desire to obtain sexually explicit images of a minor even after being alerted to the presence of law enforcement. Close supervision following his release from imprisonment is warranted to protect innocent children from the defendant and to deter the defendant from engaging in further criminal conduct. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure that the defendant continues to pursue education and vocational efforts that promote rehabilitation, § 3553(a)(2)(D).

This assessment also supports imposition of all of the mandatory and standard conditions of supervised release listed in Section 5D1.3, as well as the additional conditions outlined in Appendix A to the PSR.

**G. <u>Other considerations</u>**

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most

effective manner[.]" *Id.* at § 3553(a)(2)(D). The Presentencing Report indicates that the defendant may require drug treatment. These are services that he can seek out services during his term of imprisonment in the Bureau of Prisons or during the period of supervised release that is required to be imposed for his crimes. Moreover, every facility within the Bureau of Prisons provides some level of mental health treatment, and for sex offenders like the defendant, there is specialized treatment at a number of BOP facilities, including the Sexual Offender Management Program, which is staffed by highly trained psychiatric professionals. If the defendant desires mental health or drug treatment, he can avail himself of such treatment during his imprisonment. These concerns should not serve to mitigate his sentence of incarceration.

## V. CONCLUSION

For all of the reasons outlined above, the government recommends the Court sentence the defendant in accordance with the plea agreement reached by the parties: a sentence that is within the range of 27-33 months imprisonment, 5 years of supervised release, a special assessment of $100 and an additional assessment of up to $17,000 with the exact amount to be determined by the Court.

DAVID METCALF
United States Attorney

*/s/ Jeffrey Dimmig*
JEFFREY DIMMIG
ROSALYNDA MICHETTI
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused a true and correct copy of the foregoing Government's Sentencing Memorandum to be served by email and through the electronic filing system upon counsel for defendant:

Bernard Brody
999 Peachtree Street, Suite 400
Atlanta, GA 30309
bbrody@bbrodylawfirm.com

Sarah Hart Charette, Esq.
Gross McGinley, LLP
33 S. Seventh Street, PO Box 4060
Allentown, PA 18105
SCharette@grossmcginley.com

*/s/ Jeffrey Dimmig*
JEFFREY DIMMIG
ROSALYNDA MICHETTI
Assistant United States Attorneys

Date: September 30, 2026